# Exhibit A

2026 WL 2100471
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.

LENTO LAW GROUP PC and Lento Law Firm, Plaintiffs,
v.
Kris Emmanuel ESTRADA, Defendant.

CIVIL ACTION No. 25-2763
|
Signed 07/21/2026

**Attorneys and Law Firms**

Lawrence A. Katz, LLG National NJ PC, Cherry Hill, NJ, for Plaintiffs.

Seth A. Goldberg, Pashman Stein Walder Hayden, Philadelphia, PA, for Defendant Kris Emmanuel Estrada.

**MEMORANDUM**

Perez, District Judge

***1** This case involves negative online reviews posted by a client who retained Plaintiffs Lento Law Group PC and Lento Law Firm (together, "Lento Law") as counsel in two legal matters in the fall of 2024. Dissatisfied with Lento Law's communication, advice, and representation, Defendant Kris Emmanuel Estrada wrote critical reviews on multiple online platforms asserting Lento Law was unprofessional, unethical, and uncommunicative, and that it altogether provided inadequate legal services.

Lento Law holds itself out as a national law firm specializing in education matters.[1] Lento Law Group was founded by Joseph D. Lento, who was also the sole owner of Lento Law Firm.[2] As of July 2024, Mr. Lento was Lento Law Firm's only employee and Lento Law Group's managing attorney.[3] Mr. Lento has been suspended from practicing law in multiple jurisdictions for a multitude of violations of the professional rules of conduct occurring both before and after the events of this case.[4]

Nonetheless, Lento Law has sued its former client for defamation and other torts, asserting his negative online reviews have harmed its reputation and business prospects.[5] Estrada moves to dismiss, arguing, *inter alia*, the statements contained within his online reviews of Lento Law cannot sustain a defamation claim because they are not capable of defamatory meaning. The Court agrees. The online reviews are either admittedly true, statements of opinion, or otherwise not capable of the defamatory meaning Lento Law ascribes to them. For these reasons, and the reasons discussed herein, Lento Law's claims must be dismissed.

***2** Moreover, because Lento Law's claims are based on Estrada's protected public expression and Lento Law has failed to state a claim, Estrada is immune under Pennsylvania's Uniform Public Expression Protection Act and is entitled to his attorneys' fees, court costs, and expenses of litigation. 42 Pa. C.S. §§ 8340.15, 8340.18.

## I. Background

**A. Lento Law's Representation of Estrada and Estrada's Reviews**

In August 2024, Estrada retained Lento Law for representation in a university-level disciplinary matter at American University in Washington, D.C., and a criminal matter in Washington, D.C. Superior Court. ECF No. 18 ¶ 8. Thomas Terrill was assigned to oversee the university-level matter, and Terrell Ratliff, who is not licensed to practice law in D.C., was assigned to handle the criminal matter. *Id.* ¶¶ 9–10. Estrada executed separate fee agreements provided by Lento Law and paid $15,000 for the university-level engagement and $5,000 for the criminal matter. *Id.* ¶ 8.

For the criminal matter, Estrada had court dates scheduled in September, October, and November 2024. Ratliff needed to move for pro hac vice admission in the Washington, D.C. Superior Court and could not enter his appearance in the case or represent Estrada at the court dates until he was admitted. *Id.* ¶ 10. Ratliff did not move for pro hac vice admission before Estrada's September, October, or November court dates. *See id.* ¶ 21. Nor did Ratliff appear at those court dates. *See id.* On November 8, 2024, before the missed November court date, a conference call was held between Estrada, his mother, Mr. Lento, Terrill, Ratliff, and Groff, during which Estrada was told Ratliff could not enter an appearance until admitted pro hac vice. *Id.* ¶ 10.

Beginning in April 2025, Estrada began posting negative reviews about Lento Law's attorneys and services on more than a dozen online platforms. *Id.* ¶ 11. For example, on Avvo, Estrada wrote:

> After paying $5,000 for court representation, Mr. Lento and his firm failed to represent me by missing three court dates. Mr. Lento also included a media article about my ongoing case on his website without asking for my consent. I also sent Mr. Lento and his firm emails asking for updates on the status of Mr. Terrell Ratliff entering his appearance for my case, and **I never received any clear responses**. I eventually had a conference call with Mr. Lento and Mr. John E. Groff, who informed me they would draft a statement for the court and also email me the following day with an update. Yet, this never happened, and **my follow-up emails were upsettingly ignored**. If they could not appear for me in DC Superior Court because they needed a DC lawyer for support, then I wish they would have informed me about this in advance, especially considering that an office address in Washington DC is listed on their website.

SAC Ex. A.2, ECF No. 18 at 32; ECF No. 18 ¶ 12 (emphasis added to statements Lento Law contends are false). On a social media site, Estrada wrote:

> I am very disappointed with the Lento Law Group. I spent a total of $15,000 for services with Mr. Thomas Terrill, a New York State attorney and University of Miami faculty member who was handling my matter in Washington DC. First, I could not locate their physical office as listed in Regus – Coral Springs – Heron Bay. Second, non-refundable fees are precluded by the Rules of Professional Conduct in Washington DC, yet the Lento Law Group was charging me with non-refundable fees for services rendered in Washington DC. Also, **Tom failed to realize that my matter did not fall under Title IX policy, but rather a Non-Title IX policy for which I was not given any right to due process by reviewing evidence and/or any reports.** Further, the Lento Law Group published a news article about my case on their website without my permission. It's frustrating because I trusted them to be experienced in student defense, but they proved the opposite to me based on their **lack of organization in my opinion**. They refused to issue any refund of the $15,000 and failed to answer formal emails sent to them asking for such refunds when confronted with the DC Rules of Professional Conduct (In re Robert W. Mance).

***3** SAC Ex. A.5, ECF No. 18 at 34; ECF No. 18 ¶ 18. Estrada posted similar one-star reviews on various social media and consumer review pages. *E.g.*, SAC Ex. A.6, ECF No. 18 ¶ 20 & 35 (review on Lento Law's student defense internet page); SAC Ex. A.7, ECF No. 18 ¶ 22 & 36 (review on Lento Law Manhattan webpage). Some of his other reviews also characterized his experience with Mr. Lento and Lento Law as unethical and unprofessional. *See* SAC Exs. A.11 & Ex. A.14, ECF No. 18 at 40, 43.

The statements Lento Law highlights as being false or creating a false impression can be grouped into four categories:

1. Inadequate or unclear communications, *see, e.g.*, ECF No. 18 ¶¶ 12 ("I never received any clear responses" and "[m]y follow-up emails were upsettingly ignored."), 14 (Ratliff "failed to provide me with regular updates on the progress of entering an appearance for my case.");

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

2. Inadequate legal representation, *see, e.g.*, ECF No. 18 ¶¶ 32 ("Terrill did not deliver any results for me other than advising me to not do anything."), 22 & 24 (Terrill failed to review university policy and "failed to realize that my matter did not fall under Title IX policy, but rather a Non-Title IX policy for which I was not given any right to due process by reviewing evidence and/or any reports.");

3. Lento Law was unprofessional and unethical, *see, e.g.*, ECF No. 18 ¶¶ 28, 32; and

4. Estrada could not locate Lento Law's law offices, *see e.g.*, ECF No. 18 ¶¶ 22, 24, 26.

Lento Law does not dispute all of the statements Estrada wrote within the reviews. For example, Lento Law does not dispute that Ratliff failed to enter his appearance in the criminal matter or missed the three court dates. Nor does Lento Law aver it was false that they never drafted a letter to the Court explaining the delays, despite promising to do so. Lento Law argues instead that those statements are misleading and create a false impression that it never explained the reason for the delays because, Lento Law contends, they explained to Estrada the pro hac vice requirement. ECF No. 18 ¶ 15. However, Lento Law also avers only that they explained the pro hac vice requirement and related delays on November 8, 2024—after the first two court dates were missed. *See id.* ¶ 10.

With respect to the above four categories, Lento Law avers that each statement painted Lento Law in a false light and was misleading. Some of the statements—primarily those characterizing Lento Law as unprofessional or unethical—Lento Law contends constitute defamation per se. "Each of the statements," Lento Law argues, "individually and certainly when taken collectively, accuses [Lento Law] of and portrays them as unprofessional, unethical, failing to understand the law, and failing to perform the research and review necessary to represent [Estrada]." Opp. Mot. Dismiss, ECF No. 22 at 18.

In substance, much of the SAC faults Estrada, not for falsely describing what occurred, but for declining to accompany his criticism with Lento Law's preferred account of it. Lento Law does not deny the unentered appearance, the missed court dates, or the unanswered communications before at least two of those missed court dates. Lento Law's objection is that Estrada's reviews did not also convey Lento Law's explanations for them. *See, e.g.*, ECF No. 18 ¶¶ 15, 29, 31.

**B. Lento Law's Reputation**

As noted above, Lento Law is inextricably intertwined with the managing attorney and/or sole owner and the companies' namesake, Joseph Lento. Independent of Estrada's online reviews, Mr. Lento has a publicly documented disciplinary history spanning multiple jurisdictions. In July 2024, the Disciplinary Board of the Supreme Court of Pennsylvania issued a 135-page Report and Recommendation unanimously recommending Mr. Lento be suspended for five years due to his serious professional misconduct in connection with six matters. R. & R. of Disciplinary Bd. Sup. Ct. Pa., ECF No. 21-3. The Supreme Court of Pennsylvania followed that recommendation on November 19, 2024, and suspended Mr. Lento from the Bar of Pennsylvania for five years. *Office of Disciplinary Counsel v. Lento*, No. 3063 Disciplinary Dkt. No. 3, 2024 Pa. LEXIS 1750 (Pa. Nov. 19, 2024) (per curiam), *cert. denied*, 145 S. Ct. 1932 (2025); ECF No. 21-3 at 1. The Supreme Court of New Jersey followed suit in April 2026, suspending Mr. Lento's New Jersey license for two years because the same unethical conduct also violated New Jersey's Rules of Professional Conduct. *In re Lento*, 352 A.3d 921 (N.J. 2026). On April 28, 2026, the Supreme Court of Pennsylvania referred Mr. Lento to the Disciplinary Board to determine the extent to which he was engaging in the unauthorized practice of law while his license was suspended. *Office of Disciplinary Counsel v. Lento*, 2026 Pa. LEXIS 768 (Pa. Apr. 28, 2026) (per curiam).

***4** These recent disciplinary actions, however, are not fully representative of Mr. Lento's significant disciplinary history. In Pennsylvania, he received a one-year suspension on July 17, 2013 for violations of multiple professional rules. On April 26, 2017, New Jersey suspended his license to practice law for one year, based on the 2013 Pennsylvania suspension, the conduct for which also violated New Jersey's professional rules. *In re Joseph D. Lento*, 159 A.3d 372 (N.J. 2017); ECF No. 21-5. In June

2025, the Virginia State Bar Disciplinary Board suspended Mr. Lento from practicing law in the Commonwealth of Virginia for violations of the Virginia Rules of Professional Conduct requiring, *inter alia*, competence, diligence, communication, reasonable fees. *In the Matter of Joseph D. Lento*, VSB Docket No. 24-090-132162 (Va. State Bar Disciplinary Bd. June 26, 2025); *see also* Def.'s Ex. B, ECF No. 21-4.

In the July 2024 Report & Recommendation, the Disciplinary Board of the Supreme Court of Pennsylvania found that Mr. Lento "placed profit over professionalism," "employed a predatory style of taking on client representation, failing to ascertain whether the client's goals could be accomplished, and nevertheless accepting legal fees," failed to supervise the attorneys he assigned to clients' cases or "himself failed to do the work," and chose "to operate a law practice outside the bounds of the rules." ECF No. 21-3 at 131. The Board concluded that the record contained "no evidence that [Mr. Lento] had genuine concern for his clients." *Id.* The Commonwealth of Virginia's Disciplinary Board likewise observed that "[a]fter 17 years of practicing law, in which he has received sanctions for his misconduct, [Mr. Lento] appears to have learned little from that experience." ECF No. 21-4 at 15.

The Court includes this background information for very limited purposes: this context does not bear on the merits determination of whether Lento Law has stated a defamation (or any other) claim. However, it does bear on Estrada's anti-SLAPP arguments and the nature of online reviews of legal professionals and whether those reviews constitute protected public expression. It also bears on the practicality of Lento Law's claim for damages, though that is not an issue for this stage of the litigation. The Court recognizes that Pennsylvania has not "adopted the libel-proof plaintiff doctrine as a bar to liability, at the pleading stage or otherwise." *Wallace v. Media News Grp., Inc.*, 568 F. App'x 121, 125 (3d Cir. 2014). "To the contrary, ... the Pennsylvania Supreme Court appears to treat the issue of a plaintiff's already tarnished reputation as going to damages." *Id.* (citation omitted); *see also* *Corabi v. Curtis Pub. Co.*, 273 A.2d 899, 920 (Pa. 1971) ("[I]f [the plaintiff's] reputation is already bad, evidence of this fact is admissible and should be considered in mitigation of damages."). The Court, therefore, does not rely on any of the facts recounted in this Section as grounds for its decision, and the analysis that follows—whether Estrada's statements are actionable under Pennsylvania defamation law—would be the same on a spotless disciplinary record. The Court notes this history only because it bears on the practical viability of these claims: were they to proceed, Lento Law would face steep challenges in proving they suffered damages from Estrada's online reviews. That is true whether or not Lento Law proceeds on a theory of defamation per se. *Weiser Law Firm, P.C. v. Hartlieb*, 665 F. Supp. 3d 647, 669 (E.D. Pa. 2023) (citing *Joseph v. Scranton Times L.P.*, 129 A.3d 404, 428–29 & n.10 (Pa. 2015)) ("Ultimately, to prevail on a defamation case, a plaintiff must prove 'actual harm,' " which "includes 'impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering.' "); *id.* at 669 n.21 ("This is true even in a defamation per se matter ....").

### C. Procedural History

***5** On May 8, 2025, Lento Law sued Estrada in the Philadelphia County Court of Common Pleas, raising claims of defamation, trade libel, tortious interference with prospective economic advantage, and unjust enrichment. ECF No. 1-1. On May 30, 2025, Estrada removed the case to this Court based on diversity jurisdiction. ECF No. 1. On June 12, 2025, the parties stipulated that the Complaint should be amended to strike the unjust enrichment claim. ECF No. 9. After the Court approved the stipulation, on June 16, 2025, Lento Law filed the First Amended Complaint ("FAC"). ECF No. 11. On June 23, 2025, Estrada moved to dismiss the FAC for failure to state a claim. ECF No. 12. Lento Law conceded that the FAC was deficient under the federal pleading standard and moved for leave to file a second amended complaint. ECF No. 15. In so moving, Lento Law stated it would not add new claims or theories and that it merely sought to remedy the defects identified in the motion to dismiss. *Id.* at 12, 14. Estrada opposed Lento Law's request to amend. ECF No. 16.

On December 10, 2025, this Court dismissed the FAC for failure to state a claim. ECF No. 17. The Court granted Lento Law leave to amend to restate their defamation and trade libel claims only, denying their motion for leave to amend their tortious interference claim because Lento Law did not address Estrada's arguments related to futility in amending that claim. ECF No. 17 at n.2.

On December 11, 2025, Lento Law filed the Second Amended Complaint ("SAC"). ECF No. 18. The SAC asserts not only claims for which Plaintiffs were denied leave to amend, but also entirely new ones: tortious interference with contract (Count I); defamation (Count II); trade libel/commercial disparagement (Count III); breach of contract (Count IV); unjust enrichment (Count V); and declaratory relief (Count VI).[6]

**II. Jurisdiction**

This Court has diversity jurisdiction over this case. 28 U.S.C. § 1332(a) (establishing federal jurisdiction over suits between citizens of different states where the amount in controversy exceeds $75,000). The parties are diverse: Lento Law Group is a citizen of New Jersey, Lento Law Firm is a citizen of Pennsylvania, and Estrada is a citizen of California. ECF No. 18 ¶¶ 1–4. Lento Law claims its damages exceed $75,000. *Id.* at 27 (Prayer for Relief ¶ A).

**III. Motion to Dismiss Standard**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In determining whether to grant a motion to dismiss, the court must accept the complaint's facts as true and draw all reasonable inferences in the light most favorable to the plaintiff. *Unger v. Nat'l Residence Matching Program*, 928 F.2d 1392, 1394–95 (3d Cir. 1991). The issue before the court "is not whether plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence in support of the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (citation omitted).

Additionally, a party may only amend its pleadings once as a matter of course. Fed. R. Civ. P. 15(a)(1). Any subsequent amendments require the opposing party's consent or leave of the court. Fed. R. Civ. P. 15(a)(2).

**IV. Lento Law Did Not Have Leave to Amend Counts I, IV, V, or VI.**

Lento Law's initial complaint raised claims of defamation, trade libel, tortious interference with prospective economic advantage, and unjust enrichment. Compl., ECF No. 1-1. The parties agreed that the unjust enrichment claim should be stricken, ECF No. 9, and Lento Law filed the FAC, which made that change, ECF No. 11.

***6** In response to Estrada's first motion to dismiss, Lento Law conceded the FAC was deficient and sought leave to file a second amended complaint. ECF No. 15. In seeking leave to amend, Lento Law argued they sought "not to assert new claims or theories, but to provide additional allegations and evidence to support the previously identified theories." ECF No. 15 at 12. They "merely [sought] to file an amended complaint to respond to the deficiencies alleged in Plaintiff's Rule 12 Motion." *Id.* at 12, 14. In the briefing, Lento Law failed to address Estrada's arguments relating to the futility of the tortious interference claim. Accordingly, the Court denied leave to amend the tortious interference claim but granted leave to amend the defamation and trade libel claims. ECF No. 17 at n.2. Despite the Court's ruling and Lento Law's assurances, Lento Law filed the SAC, asserting not only claims addressed in the motion for leave to amend, but also entirely new ones: tortious interference with contract (Count I); defamation (Count II); trade libel/commercial disparagement (Count III); breach of contract (Count IV); unjust enrichment (Count V); and declaratory relief (Count VI). ECF No. 18.

Federal Rule of Civil Procedure 15 allows a party to amend once as a matter of course. Fed. R. Civ. P. 15(a)(1). Any subsequent amendments require the opposing party's consent or the court's leave. Fed. R. Civ. P. 15(a)(2). Lento Law had neither with respect to Counts I, IV, V, and VI. Nor does Lento Law argue those counts should survive. *See* ECF No. 22. They are, therefore, dismissed. *See* *U.S. ex rel. Atkinson v. PA. Shipbuilding Co.*, 473 F.3d 506, 524 (3d Cir. 2007) ("The rejection of an unapproved amended complaint is not an abuse of discretion.").

**V. Defamation**

### A. General Principles of Defamation Law

To state a defamation claim under Pennsylvania law,[7] the plaintiff must plead:

> (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion.

42 Pa. Cons. Stat. § 8343(a). Estrada focuses on the first and sixth elements: whether the statements were defamatory and whether Lento Law suffered special harm.

The Court must first determine whether the statements at issue are capable of a defamatory meaning. *City of Rome v. Glanton*, 958 F. Supp. 1026, 1041 (E.D. Pa. 1997). "If not, the claim must be dismissed," *Gibney v. Fitzgibbon*, No. 13-7, 2013 WL 1197894, at *3 (E.D. Pa. Mar. 22, 2013), *aff'd*, 547 F. App'x 111 (3d Cir. 2013); *see also* *Bell v. Mayview State Hosp.*, 853 A.2d 1058, 1061–62 (Pa. Super. Ct. 2004), but only if the court is certain they are not susceptible to a defamatory meaning. *See* *Gordon v. Lancaster Osteopathic Hosp. Ass'n*, 489 A.2d 1364, 1368 (Pa. Super. Ct. 1985).

Only statements of fact, not expressions of opinion, are actionable. *Mzamane v. Winfrey*, 693 F. Supp. 2d 442, 477 (E.D. Pa. 2010). An expression of opinion is only capable of defamatory meaning if it can "reasonably be understood to imply the existence of undisclosed defamatory facts justifying the opinion." *Id.* at 477 (quotation marks omitted). This is so because, "when the opinion-holder discloses the factual basis for the idea," a listener can evaluate the soundness of an opinion, making the opinion incapable of defamatory meaning. *Redco Corp. v. CBS, Inc.*, 758 F.2d 970, 972 (3d Cir. 1985). However, if an opinion implies "unstated facts for its basis," the listener is unable to evaluate the opinion's soundness, and the implied underlying defamatory facts may make the opinion capable of defamatory meaning. *Id.*; *see also* *McCafferty v. Newsweek Media Grp., Ltd.*, 955 F.3d 352, 357 (3d Cir. 2020).

To determine whether a communication is capable of defamatory meaning, courts consider "(1) whether the communication was reasonably capable of conveying the particular meaning ascribed to it by the plaintiff; and (2) whether that meaning is defamatory in character." *Monge v. Univ. of Pa.*, No. 22-2942, 2023 WL 3692935, at *2 (E.D. Pa. May 26, 2023) (citation omitted); *see also* Restatement (Second) of Torts § 614(1) & cmt. b (1977). The court must evaluate the statements in context because context may make the plaintiff's interpretation unreasonable even where a statement appears defamatory in isolation. *Tucker v. Philadelphia Daily News*, 848 A.2d 113, 124 (Pa. 2004) (citations omitted). To the extent a plaintiff relies on what the words imply as opposed to the natural meaning of the words themselves, it cannot use "innuendo ... to introduce new matter, or to enlarge the natural meaning of the words, and thereby give to the language a construction which it will not bear." *Gibney*, 547 F. App'x at 114 (internal quotation marks omitted) (quoting *Sarkees v. Warner-W. Corp.*, 37 A.2d 544, 546 (Pa. 1944)). Nor can a plaintiff prevail based on statements that are "merely annoying or embarrassing," mere obscenities or insults, "rhetorical hyperbole," or "vigorous epithet[s]." *Beverly Enters., Inc. v. Trump*, 182 F.3d 183, 187 (3d Cir. 1999) (quoting *Kryeski v. Schott Glass Techs., Inc.*, 626 A.2d 595, 601 (Pa. Super. Ct. 1993)).

***7** A communication is defamatory in character if it tends to "blacken a person's reputation or expose him to public hatred, contempt, or ridicule, or injure him in his business or profession," *Joseph v. Scranton Times L.P.*, 959 A.2d 322, 334 (Pa. Super. Ct. 2008) (citations omitted), or if it tends to "lower him in the estimation of the community or ... deter third persons from associating or dealing with him," *Maier v. Maretti*, 671 A.2d 701, 704 (Pa. Super. Ct. 1995); *see also* *Tucker*, 848 A.2d at 126 (articles falsely characterizing lawsuit as one to recover $10 million in compensation for loss of sexual relations as result of song lyrics could make plaintiffs "seem overly interested in money or sex, and not concerned with their life work of fighting for civil rights"; and this could cause people to decline to associate with plaintiffs).

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

With respect to the sixth element of a defamation claim, a plaintiff proceeding on a theory of defamation *per se* need not establish special harm. *See Beverly Enters.*, 182 F.3d at 187 n.1 (citing *Baird v. Dun & Bradstreet*, 285 A.2d 166, 171 (Pa. 1971)). "Defamation *per se* can be either words imputing (1) criminal offense, (2) loathsome disease, (3) business misconduct, or (4) serious sexual misconduct." *Synygy, Inc. v. Scott-Levin, Inc.*, 51 F. Supp. 2d 570, 580 (E.D. Pa. 1999), *aff'd* 229 F.3d 1139 (3d Cir. 2000). A statement is defamatory *per se* as an accusation of business misconduct if it "ascribes to another conduct, characteristics or a condition that would adversely affect his fitness for the proper conduct of his lawful business, trade or profession." *Clemente v. Espinosa*, 749 F. Supp. 672, 677 (E.D. Pa. 1990) (quoting Restatement (Second) of Torts § 573 (1977)). "The statement must be more than mere general disparagement.... Typically business misconduct refers to 'conduct that is illegal or connotes illegal activity.' " *I.M. Wilson, Inc. v. Otvetstvennostyou "Grichko"*, 500 F. Supp. 3d 380, 424–25 (E.D. Pa. 2020) (quoting *Jungclaus v. Waverly Heights, Ltd.*, No. 17-4462, 2018 WL 1705961, at *4 (E.D. Pa. Apr. 9, 2018)).

**B. Many of the Statements Are Non-Actionable Opinions.**

Estrada characterizes the statements contained in his online reviews as opinions. *See* ECF No. 21-2 at 12–15 (setting forth each statement in a table and describing why it fails). Lento Law admits that the statements contain opinions but argues those opinions are based on several untrue statements of facts. ECF No. 22 at 23. "Pure opinions cannot defame," nor can opinions based on disclosed facts. *McCafferty*, 955 F.3d at 357 (italics removed). Even an opinion that is extremely derogatory is privileged if the speaker or writer discloses the facts upon which the opinion is based. *Id.* "That privilege makes sense. When an article discloses the underlying facts, readers can easily judge the facts for themselves." *Id.* Accordingly, only an opinion that implies the existence of undisclosed facts, which could be proven false, is actionable. *Id.* Several statements within the first three categories are opinions.

**Category One: Inadequate or Unclear Communications.** Within the first category of statements, Estrada expressed his disappointment in not receiving "clear responses" to his queries regarding Ratliff entering his appearance, ECF No. 18 ¶ 12, that after not receiving an update as promised, his "follow-up emails were upsettingly ignored," *id.*, that lawyers failed to provide regular updates on his case, *id.* ¶ 14, and that Mr. Lento "did not make it clear" that Mr. Lento "was not barred to practice law in Washington, D.C.," *id.* ¶ 30. These are Estrada's opinions that the communications were unclear, too infrequent for his comfort, and did not seem to be handled with appropriate care.[8]

***8 Category Two: Dissatisfactory Legal Representation.** Within the second category of statements, Estrada expressed his frustration with the lack of results, ECF No. 18 ¶ 32, as well as Terrill's "fail[ure] to realize that my matter did not fall under Title IX policy, but rather a Non-Title IX policy for which I was not given any right to due process by reviewing evidence and/or any reports," *id.* ¶ 28. Estrada also stated he was disappointed by Terrill "failing to read through appropriate and relevant University policy." *Id.* In context, Estrada's statement that Terrill failed to read through university policy or realize which policy applied is reasonably understood as an inference from the facts disclosed in the review—namely, that Terrill treated the matter as governed by Title IX even though the non-Title IX policy applied and that Estrada was not allowed to review evidence or reports related to the non-Title IX policy. The reader could evaluate the soundness of that inference from the disclosed facts. Additionally, Lento Law does not dispute that Terrill failed to produce results; instead, Lento Law argues the statement "is misleading as it fails to explain all the efforts Mr. Terrill took on Defendant's behalf." *Id.* ¶ 29. Efforts do not equate to results, and the law does not require Estrada to detail "all of the efforts" Terrill took when those efforts yielded dissatisfactory results. When read in context, as is required, the average person to whom the statements were directed would be able to interpret these words without false implication upon reviewing the disclosed facts. *See Marier v. Lance, Inc.*, No. 07-4284, 2009 WL 297713, at *3 (3d Cir. 2009) (finding statement that plaintiff was stalking defendant because defendant thought he saw plaintiff's car outside his house was inactionable opinion based on disclosed facts).

**Category Three: Characterization of Lento Law as Unprofessional, Disorganized, and Unethical.** Within the third category of statements, Estrada again expressed his opinion based on the inadequate communications, delays, lack of results, and/or Lento Law's fee structure. These characterizations are no more than rhetorical hyperbole. *See Beverly Enters.*, 182 F.3d at 187–

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

88 (finding accusations that plaintiffs engaged in "union-busting" and calling them "criminals" were "undoubtedly offensive and distasteful," but not actionable in defamation); *Gordon v. Lancaster Osteopathic Hosp. Ass'n, Inc.*, 489 A.2d 1364, 1369 (Pa. Super. Ct. 1985) (general comments of "no confidence" and "lack of confidence" in plaintiff's work were statements of opinion, which "cunningly or unwittingly stopped short of committing acts susceptible of defamatory meaning"). If a speaker is "expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable." *Pace v. Baker-White*, 432 F. Supp. 3d 495, 513 (E.D. Pa. 2020), *aff'd on other grounds*, 850 F. App'x 827 (3d Cir. 2021) (citation omitted). The statements here communicate Estrada's viewpoint, which is subject to disagreement—what it means to be disorganized or unprofessional is a matter of opinion that may vary person to person. Moreover, Estrada disclosed the bases for his opinions—the no-shows at court, the infrequent or unclear communications, or the fact that certain attorneys were not licensed to practice law in D.C.—and does not suggest additional undisclosed facts.[9] Accordingly, these statements are not actionable in defamation. *McCafferty*, 955 F.3d at 357 (finding opinions based on disclosed facts are "absolutely privileged" and "cannot be defamatory ... no matter how derogatory they are" (citation modified)).

***9** Likewise, with respect to Estrada's characterization of Mr. Lento as unethical, he provides the basis for his opinion that the fee arrangement was unethical. *See* ECF No. 18 at 40 (Mr. Lento "charged me flat, non-refundable fees, which is already not allowed under the DC Ethics Rules of Professional Conduct (RPC), which is where both my matters took place."). Indeed, under the D.C. Rules of Professional Conduct, "when an attorney receives payment of a flat fee at the outset of a representation, the payment is an 'advance[ ] of unearned fees' and 'shall be treated as property of the client ... until earned unless the client consents to a different arrangement." *In re Mance*, 980 A.2d 1196, 1202 (D.C. 2009) (quoting Rule 1.15(d)). A flat fee "is earned 'only to the degree that the attorney actually performs the agreed-upon services." *Id.* (citation omitted). Accordingly, if a lawyer terminates the representation before earning the payment, he must return the portion he did not earn "because a lawyer cannot earn a fee for doing nothing." *Id.* (citation omitted). The reader of Estrada's review can examine the disclosed facts and the D.C. Professional Rules and determine the truth of his opinion. *McCafferty*, 955 F.3d at 357. This opinion statement, is therefore, not actionable.[10]

### C. The Fourth Category of Statements Is Not Capable of the Meaning Lento Law Ascribes.

The fourth category of statements relates to Estrada's inability to locate certain Lento Law offices. Lento Law does not aver Estrada actually located those offices or otherwise falsely stated a fact. Rather, Lento Law avers the statement "*implied* that Plaintiffs did not have a physical office while they did," and that Estrada implied Lento Law misrepresented that the offices existed. ECF No. 18 ¶¶ 21, 25 (emphasis added). Estrada never stated the offices did not exist; he stated only that he could not locate them. Lento Law cannot rely on innuendo to expand Estrada's actual words to imply the offices do not exist or that Lento Law misrepresented their location. *See Gibney*, 547 F. App'x at 114. "[T]he innuendo must be warranted, justified and supported by the publication." *Mzamane*, 693 F. Supp. 2d at 478 (quoting *Livingston v. Murray*, 612 A.2d 443, 449 (Pa. Super. Ct. 1992)). Even accepting that the innuendo Lento Law asserts is warranted, the implication that some listed offices did not exist would not be defamatory when read in context. Although that implication might be irksome, it cannot be said to "grievously fracture[ ] [Lento Law's] standing in the community of respectable society." *Scott-Taylor, Inc. v. Stokes*, 425 Pa. 426, 229 A.2d 733, 734 (1967).

### D. The Remainder of the Statements Are Not Defamatory.

Even where Lento Law has identified statements of fact that it contends are false and that can be proven false, those statements are not capable of defamatory meaning. Viewed in the context of a disgruntled former client who was disappointed in the services he received, the progress of his matters, and the outcome, the statements posted on business review websites simply cannot be ascribed the defamatory meaning Lento Law puts forth. Nor do they rise to the level of being capable of so lowering

Lento Law in the estimation of the community as to constitute defamation. A challenged statement must "do more than merely annoy or embarrass the purported victim"; it must so harm his reputation "as to lower him in the estimation of the community or deter third parties from associating" with him. *Gibney*, 547 F. App'x at 113; *see, e.g., Kryeski v. Schott Glass Techs., Inc.*, 626 A.2d at 600–01 (statement that a person was "emotionally unstable" and "crazy" not susceptible to defamatory meaning); *Rybas v. Wapner*, 457 A.2d 108 (Pa. Super. Ct. 1983) (statement characterizing a person as anti-Semitic not actionable as defamation). Estrada's online reviews of Lento Law's services are more akin to vigorous epithets and rhetorical hyperbole on platforms where such critical language is to be expected. Accordingly, the statements, even if able to be proven false, do not amount to actionable defamation, and Lento Law's defamation claim must be dismissed.

### E. Defamation *Per Se*

***10** Estrada's statements especially do not rise to the level of defamation *per se.* To allege defamation per se based on business misconduct, a statement must be more than a mere general disparagement or negative opinion. *See Synygy*, 51 F. Supp. 2d at 580. It must "ascribe[ ] to another conduct, characteristics or a condition that would adversely affect his fitness for the proper conduct of his lawful business, trade or profession." *Clemente*, 749 F. Supp. at 677–78 (stating that plaintiff's attorney representing labor unions was "connected with the Mafia" and an "informant for the Government" was slanderous per se, especially where "labor leaders are highly sensitive to the public's perception that they are 'part of the mob' "). "Typically business misconduct refers to 'conduct that is illegal or connotes illegal activity.' " *I.M. Wilson, Inc.*, 500 F. Supp. 3d at 424–25; *see also Pelagatti v. Cohen*, 536 A.2d 1337, 1345–46 (Pa. Super. Ct. 1987) (finding statements that attorney unlawfully conspired with judge were defamation *per se*, stating "statements to the effect that an attorney has committed improper, illegal actions within the context of his practice, would tend to impugn his integrity, and thereby blacken his business reputation"). Estrada's statements fall short of that standard. *See, e.g., Sweeney v. Phila. Record Co.*, 126 F.2d 53, 54 (3d Cir. 1942) (accusation that lawyer opposed appointment of individual as judge because he was a foreign-born Jew not libel per se upon a member of the bar) *cf. Montgomery v. New Era Printing Co.*, 78 A. 85, 86 (Pa. 1910) (statement accusing lawyer of billing clients twice for same work was actionable per se, as are words imputing "to an attorney at law the want of the requisite qualifications to practice law, or with having been guilty of corrupt, dishonest, or improper practice in the performance of his duties as a lawyer"). While Estrada accused Lento Law of being less than diligent in its handling of his matters and characterized its fee practices as unethical, those characterizations are, as discussed above, opinions based on disclosed facts. They are not false factual imputations of criminal or dishonest conduct of the kind that would adversely reflect on Lento Law's fitness to conduct their business. Accordingly, to the extent Lento Law invokes a defamation *per se* theory, it fails.

### VI. Commercial Disparagement

Lento Law conclusorily alleges they lost "existing and potential clients," "business opportunities in multiple jurisdictions," and expenses related to removal of the content. However, they allege no specific pecuniary loss. This is insufficient to sustain a commercial disparagement claim.

Commercial disparagement, or trade libel, "consists of the publication of a disparaging statement concerning the business of another." *Maverick Steel Co. v. Dick Corp./Barton Malow*, 54 A.3d 352, 354 (Pa. Super. Ct. 2012). While defamation "protects an entity's interest in character and reputation," a commercial disparagement action does so for "economic interests related to the marketability of goods." *Brooks Power Sys., Inc. v. Ziff Commc'ns, Inc.*, No. 93-3954, 1994 WL 444725, at *2 (E.D. Pa. Aug. 17, 1994) (citation omitted). Accordingly, a commercial disparagement plaintiff must plead damages with considerable specificity by pleading, for example, "the names of the customers lost and financial loss resulting from the tort," *Bro-Tech Corp. v. Thermax, Inc.*, 651 F. Supp. 2d 378, 416 (E.D. Pa. 2009) (internal quotation marks omitted), or facts establishing the amount of sales preceding publication and the amount subsequent to publication, *Universal Elec. Corp. v. Baldwin*, No. 2:17-cv-00842, 2018 WL 3707423, at *15 (W.D. Pa. Aug. 3, 2018). *See also Brooks Power Sys., Inc.*, 1994 WL 444725 at *3 (explaining a trade libel plaintiff "must establish direct pecuniary loss ... ; general loss of reputation or character is insufficient"). A mere statement that, because of the defendant's disparagement, the plaintiff has "suffered a loss of customers, current and prospective

[with] no attempt ... to specify which customers, nor ... any effort to even approximate their value to him" is not enough. *Testing Sys., Inc. v. Magnaflux Corp.*, 251 F. Supp. 286, 290 (E.D. Pa. 1966).

Lento Law's conclusory allegations that they suffered loss, without some allegation showing specific pecuniary loss, are insufficient. Lento Law identifies no lost clients or income and shows no decrease in business as compared to the amount of business received before the reviews. Although Lento Law argues they suffered pecuniary loss for the cost of removing the online reviews, such loss cannot alone support a commercial disparagement claim "because unless other pecuniary loss was occasioned by [the negative reviews], the 'rehabilitation' was not reasonably necessary." *Brooks Power Sys., Inc.*, 1994 WL 444725 at *7. Lento Law's more generalized allegations concerning the loss of existing and potential clients and negative search engine optimization consequences do not meet the pleading standard for a commercial disparagement claim. *See Universal Elec. Corp.*, 2018 WL 3707423, at *15; *Bro-Tech Corp. v. Thermax, Inc.*, 651 F. Supp. 2d at 416; *Testing Sys.*, 251 F. Supp. at 290. Count III must, therefore, be dismissed.

**VII. Anti-SLAPP**

***11** Estrada asks the Court to order Lento Law to pay his fees and costs under Pennsylvania's Uniform Public Expression Protection Act, 42 Pa. C.S. § 8340.18 (the "Anti-SLAPP Law"). For the reasons discussed in detail below, the Court holds the fee-shifting provision of Pennsylvania's Anti-SLAPP Law applies in federal court on a successful Federal Rule of Civil Procedure 12(b)(6) motion to dismiss. Accordingly, because Lento Law has failed to state a claim upon which relief can be granted, Estrada is entitled to costs and fees of defending himself in this action.

**A. Background of the Anti-SLAPP Law**

Pennsylvania's Anti-SLAPP Law took effect on July 17, 2024. *Hernandez v. Zook*, 351 A.3d 795, 798 (Pa. Super. Ct. 2026). Recognizing that "[t]here has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of protected public expression," the Anti-SLAPP Law grants immunity to parties exercising their rights to protected public expression and awards attorney fees to parties forced to defend against meritless claims arising from that protected public expression. 42 Pa. C.S. § 8340.12. Protected public expression includes: "(1) communication in a legislative, executive, judicial or administrative proceeding; (2) communication on an issue under consideration or review in a legislative, executive, judicial or administrative proceeding; or (3) exercise, on a matter of public concern, of the rights of freedom of speech or of the press, the right to assemble or petition or the right of association." *Id.* at § 8340.13(1)–(3).

If a party is sued based on protected public expression, and that party is immune under § 8340.15 of the Anti-SLAPP Law, "the court *shall* award the party attorney fees, court costs, and expenses of litigation ...." 42 Pa. C.S. § 8340.18 (emphasis added). A party is immune under the Anti-SLAPP Law if the plaintiff who brought a claim based on protected public expression fails to "state a cause of action upon which relief can be granted," fails to "establish a prima facie case as to each essential element of the cause of action," or "[t]here is no genuine issue as to any material fact, and the person against whom the cause of action based on protected public expression has been asserted is entitled to judgment as a matter of law in whole or in part." 42 Pa. C.S. § 8340.15. In other words, if a claim is dismissed before trial based on any one of three standards—the federal motion to dismiss standard, the trial standard, or the summary judgment standard—the court must shift the fees and costs to the plaintiff who wrongly filed a SLAPP suit. *Id.* §§ 8340.15, 8340.18.

The Anti-SLAPP Law also has a section creating procedures for pre-trial dismissal called a "special motion." 42 Pa. C.S. § 8340.16(a). This section of the Anti-SLAPP Law is not yet effective. *See Salaam v. Trump*, 350 F.R.D. 14, n.3 (E.D. Pa. 2025) (citing *Jakes v. Youngblood*, 782 F. Supp. 3d 210, 215–16 (W.D. Pa. 2025)) (explaining the only way for procedural rules to become effective in Pennsylvania is through a rule promulgated by the Supreme Court of Pennsylvania, which the Court has yet to do). Nor is it the only procedural mechanism through which a party may assert his immunity. 42 Pa. C.S. § 8340.16(c). Indeed, § 8340.16(a) states a party *may* bring a special motion for dismissal, and § 8340.16(c) explicitly makes the immunity

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

defense available through other motions. *Id.* § 8340.16(c) ("A motion under subsection (a) does not preclude a party from asserting public expression immunity through other pleadings and motions under the Pennsylvania Rules of Civil Procedure."). Additionally, the fee-shifting section of the Anti-SLAPP Law says nothing of a special motion, and it invokes the motion to dismiss standard applicable both in federal court, Fed. R. Civ. P. 12(b)(6), and in Pennsylvania courts, Pa. R. Civ. P. 1028; *see also* *Keller v. Bank of N.Y. Mellon*, 212 A.3d 52, 56 (Pa. Super. Ct. 2019). 42 Pa. C.S. § 8340.18. For the Anti-SLAPP Law's fee-shifting provision to apply, therefore, the Court need only find the defendant was immune under § 8340.15 and that the plaintiff failed to state a claim upon which relief can be granted.

**B. Application of the Anti-SLAPP Law in Federal Court**

***12** The parties do not dispute that Estrada's online reviews address matters of public concern—the professionalism and ethics of lawyers—and are, therefore, protected public expression. However, they dispute whether the fee-shifting provision of Pennsylvania's Anti-SLAPP Law applies in federal court on a dismissal under Fed. R. Civ. P. 12(b)(6).

The Court must first determine whether Pennsylvania's Anti-SLAPP Law applies in federal court. The *Erie* doctrine requires a federal court sitting in diversity to apply state substantive law and federal procedural law. *Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)). Fee-shifting statutes are generally considered substantive where they are tied to the outcome of the litigation. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 52–53 (1991). Accordingly, federal courts apply the forum states' rules regarding attorneys' fees, so long as its rules "do not run counter to federal statutes or policy considerations." *Montgomery Ward & Co. v. Pacific Indem. Co.*, 557 F.2d 51, 56 (3d Cir. 1977); *see also* *Sec. Mut. Life Ins. Co. of N.Y. v. Contemp. Real Est. Assocs.*, 979 F.2d 329, 331–32 (3d Cir. 1992). However, "[w]here a Federal Rule of Civil Procedure provides a resolution of an issue, that rule must be applied by a federal court sitting in diversity to the exclusion of a conflicting state rule so long as the federal rule is authorized by the Rules Enabling Act and consistent with the Constitution." *Chamberlain*, 210 F.3d at 159 (citing *Hanna v. Plumer*, 380 U.S. 460 (1965)).

The *Erie* inquiry thus proceeds in two steps. First, the federal court must determine whether the state law "directly 'collides' " with a Federal Rule. *Id.* If there is a direct collision—*i.e.*, the state law "answer[s] the same question" differently than the federal rule—the federal rule must apply. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398–99 (2010). If there is no direct collision or the federal rule is inapplicable or invalid, the court must proceed to the second step, which is to apply the *Erie* rule to determine if state law should be applied. *Chamberlain*, 210 F.3d at 159. The *Erie* rule "focus[es] on whether application of a state rule will or may affect the outcome." *Id.* It "is intended to serve 'twin aims': 'discouragement of form shopping and avoidance of inequitable administration of the laws.' " *Id.* (quoting *Hanna*, 380 U.S. at 468). In other words, at the second step (and only at the second step), the court must examine whether the state statute is outcome determinative and whether failure to apply it would encourage forum shopping or lead to the inequitable administration of the law. *See id.* at 161.

**1. The Anti-SLAPP Law Does Not Conflict with the Federal Rules.**

It is true that some provisions of the Anti-SLAPP Law directly collide with the Federal Rules. For example, the special motion provision creates a pretrial motion to which the court would apply the state's summary judgment standard. 42 Pa. C.S. § 8340.16. Upon the filing of a special motion, specific procedures including a stay of the proceedings would apply. *Id.* " '[D]iscovery-limiting aspects' of anti-SLAPP statutes do not apply in federal court because the Federal Rules 'reflect a policy of forcing a defendant to disclose adverse facts before he may challenge plaintiff's case for factual sufficiency.' " *Paucek v. Shaulis*, 349 F.R.D. 498, 513 (D.N.J. 2025) (quoting *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 274 (9th Cir. 2013)). As noted above, however, this section is not yet effective, and Estrada does not rely on it for dismissal.

***13** More importantly, not every provision of the Anti-SLAPP Law—including the two at issue here—conflicts with the Federal Rules. Lento Law points to no authority that would suggest an "all or nothing" standard governs the direct collision

question. *See Paucek*, 349 F.R.D. at 515 ("[T]he Court is aware of no authority requiring it to hold that [New Jersey's anti-SLAPP law] either applies in federal court as a whole or else it does not apply in federal court at all."). Indeed, courts have examined anti-SLAPP laws provision by provision and applied some in federal court while rejecting others. *Id.* (citing *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 845 (9th Cir. 2001) (rejecting the discovery-limiting aspects of California's anti-SLAPP statute while approving its fee-shifting mechanism); and *Adelson v. Harris*, 774 F.3d 803, 809 (2d Cir. 2014) (questioning the discovery-limiting aspects of Nevada's anti-SLAPP statute but finding its mandatory fee-shifting provision to be "unproblematic")).

The Third Circuit has not yet ruled on the applicability of Pennsylvania's Anti-SLAPP Law in federal court, but several federal district court cases have touched on the issue. *See Henrich v. Colby's Crew Rescue*, No. 25-4961, 2026 WL 839119, at *8 (E.D. Pa. Mar. 26, 2026) (Henry, J.); *McCaffery v. N.Y. Univ. Sch. of Law*, No. 25-cv-2429, 2026 WL 746606, at *12 (E.D. Pa. Mar. 16, 2026) (Murphy, J.); *Vespico v. Kass-Gerji*, No. 25cv512, 2026 WL 736463, at *11–13 (M.D. Pa. Mar. 16, 2026); *Salaam v. Trump*, 350 F.R.D. 14 (E.D. Pa. 2025) (Beetlestone, J.); *Jakes v. Youngblood*, 782 F. Supp. 3d 210 (W.D. Pa. 2025). And one district court in this Circuit has addressed the applicability of New Jersey's materially similar anti-SLAPP law in federal court. *Paucek v. Shaulis*, 349 F.R.D. 498 (D.N.J. 2025).

Each of the Pennsylvania cases to decide the issue held the immunity provision of Pennsylvania's Anti-SLAPP Law conflicts with Federal Rules of Civil Procedure 12 and 56. *Jakes*, 782 F. Supp. 3d at 218; *Salaam*, 350 F.R.D. at 20; *Henrich*, 2026 WL 839119, at *8.[11] Two of the three cases, however, were distinct from this one because the defendants moved for dismissal only under the Anti-SLAPP Law, and not under Rule 12(b)(6). *Jakes*, 782 F. Supp. 3d at 215; *Salaam*, 350 F.R.D. at 15. Nonetheless, the courts examined the Anti-SLAPP Law's immunity provision in the context of rejecting the movant's special motion. The immunity provision allows a party to establish his immunity by either the Rule 12(b)(6) standard or the Rule 56 summary judgment standard. *See* 42 Pa. C.S. § 8340.15. It also allows a party to establish his immunity pre-trial with the standard a plaintiff in federal court need not meet until trial (the prima-facie showing). *Id.* Courts have viewed this as "creat[ing] a mechanism to resolve a case pre-trial that conflicts with Federal Rule of Civil Procedure 12(b)(6) by effectively supplanting the Rule 12(b)(6) motion to dismiss standard with the Rule 56 summary judgment standard." *Henrich*, 2026 WL 839119, at *8 (internal punctuation omitted) (quoting *Jakes*, 782 F. Supp. 3d at 218).

One court in this District has gone the next step to evaluate the applicability of the fee-shifting provision. *Id.* at *9. The court found that "when an anti-SLAPP statute provides a procedural mechanism for dismissal that does not apply in federal court, fee provisions that are predicated on that procedural mechanism similarly do not apply in federal court." *Id.* (collecting cases).

This Court respectfully disagrees with its colleagues insofar as their reasoning relates to the unique circumstances of this case. First, unlike *Jakes* and *Salaam*, which were faced with the special motion provision in conjunction with the immunity provision, the only two provisions at issue here are the fee-shifting provision and the immunity provision. It is helpful to look at the text of those provisions side-by-side.

> ***14** A person is immune from civil liability for a cause of action based on protected public expression if any of the following paragraphs apply:
>
> (1) The party asserting the cause of action based on protected public expression fails to:
>
> (i) establish a prima facie case as to each essential element of the cause of action; or
>
> (ii) state a cause of action upon which relief can be granted.
>
> (2) There is no genuine issue as to any material fact, and the person against whom the cause of action based on protected public expression has been asserted is entitled to judgment as a matter of law in whole or in part.

42 Pa. C.S. § 8340.15.

> (a) Party asserting immunity.--If a cause of action based on protected public expression is commenced against a party, all of the following apply:

(1) If the party is immune under section 8340.15 (relating to grant of immunity), the court shall award the party attorney fees, court costs and expenses of litigation jointly and severally against each adverse party that asserted the cause of action.

42 Pa. C.S. § 8340.18.

It is clear to this Court that neither of these provisions mentions that a fee award is available only upon pre-trial dismissal or that plaintiff may be required to make a prima facie showing before trial. Thus, because this Court is not faced with the question of whether the Anti-SLAPP Law's special motion to dismiss applies, it is not compelled to conclude that either provision at issue purports to establish a procedure at all. Rather, it creates a substantive right—immunity from suit based on protected public expression; a remedy for the harm of having to defend that right—attorneys' fees and litigation costs; and the circumstances when that remedy is available—upon success at the pleading or summary judgment stage, or if the plaintiff fails to meet their burden at trial. This is no different from any other statute which provides for recovery of attorneys' fees to the party who prevails on their claims. *E.g.*, *Sioux Cnty. v. Nat'l Surety Co.*, 276 U.S. 238, 242 (1928) (enforcing state statute mandating reasonable attorney's fee award to plaintiff who prevails in action to enforce insurance policy). For this reason, the Court concludes there is no direct collision between the Anti-SLAPP Law's immunity or fee-shifting provisions.

Second, in holding the fee-shifting provision does not apply in federal court, *Henrich* looked to other federal circuits interpreting other states' anti-SLAPP laws, but each of those courts answered a different question than what is before this Court today. *Abbas v. Foreign Pol'y Grp., LLC* examined D.C.'s Anti-SLAPP Act, which creates a special motion to dismiss that requires a plaintiff to show likelihood of success on the merits in order to proceed to trial. 783 F.3d 1328, 1334 (D.C. Cir. 2015). The court found this conflicted with Federal Rules 12 and 56 because it "set[s] up an additional hurdle a plaintiff must jump over to get to trial. *Id.* The court then declined to award fees because D.C.'s anti-SLAPP law does not make such an award available to parties who obtain dismissal by any means other than the special motion. *Id.* at 1337 n.5. *Klocke v. Watson* involved a similar question —whether the special motion to dismiss section of Texas's anti-SLAPP law (which applies a burden-shifting framework and heightened evidentiary standard) could apply in federal court. 936 F.3d 240, 243–44 (5th Cir. 2019). The Fifth Circuit explained that Texas's special motion to dismiss imposes additional requirements pre-trial that the Federal Rules lack. *Id.* at 246. In this way, like the D.C. law, the Texas law conflicted with Federal Rules 12 and 56. *Id.* The Fifth Circuit then declined to discuss the fee-shifting provision because it was applicable only upon the success of a special motion. *Id.* at 247 n.6. Finally, *La Liberte v. Reid* examined California's anti-SLAPP law, first finding its provision creating a special motion to strike could not apply in federal court. 966 F.3d 79, 87 (2d Cir. 2020) (explaining that California's anti-SLAPP statute nullifies Rule 56 "by requiring the plaintiff to prove that it is likely, and not merely possible, that a reasonable jury would find in his favor"). The Second Circuit then concluded that the fee-shifting provision did not apply to a Rule 12(b)(6) dismissal because it "awards attorneys' fees *only* to 'a prevailing defendant *on a special motion to strike.*' " *Id.* at 89 (emphasis in original) (quoting Cal. Civ. Pro. Code § 425.16(c)(1)).

***15** Notably, each of those cases is distinguishable from Pennsylvania's anti-SLAPP Law in two ways. First, they each involved the question of whether a party could bring a special motion to dismiss, which imposed a heavier burden on the plaintiff than the Federal Rules would. Second, the fee-shifting provisions of the statutes at issue applied only when a party prevailed on a special motion. Neither of those circumstances are present here. Estrada moved for dismissal under Rule 12(b)(6) and did not invoke a special statutorily created procedural mechanism.[12] Nor did the Court require Lento Law to meet any heightened pleading standard. Additionally, Pennsylvania's fee-shifting provision says nothing of the special motion to dismiss and, indeed, expressly preserves a party's right to assert their immunity in other motions or pleadings.

This Court finds the reasoning by *Paucek v. Shaulis* more persuasive. *Paucek* applied New Jersey's Anti-SLAPP fee-shifting provision on a Rule 12(b)(6) motion to dismiss. 349 F.R.D. 498, 514 (D.N.J. 2025). New Jersey's statute allows for recovery of fees if the complaint is dismissed before trial under any one of three standards: the plaintiff fails to establish a prima facie case (plaintiff's burden at trial); the plaintiff fails to state a claim (Rule 12(b)(6) standard); or the defendant shows there is no dispute of material fact and he is entitled to judgment as a matter of law (Rule 56 standard). *Id.* at 514. *Paucek* found that some provisions of New Jersey's Anti-SLAPP law conflicted with federal procedural law, including the provision permitting

pretrial dismissal when a plaintiff fails to establish a prima facie case. *Id.* The court nevertheless found the conflicting provisions severable[13] and determined that the mandatory fee-shifting provision applies for defendants who secure dismissal under Rule 12 or Rule 56. *Id.* at 516; *see also Project Veritas v. Leland Stanford Junior Univ.*, 2022 WL 155047, at *3 (W.D. Wash. May 17, 2022) (holding that as long as defendants rely on Rule 12 standard for dismissal, fee-shifting provision of similar anti-SLAPP statute can apply in federal court).

In sum, this Court finds that Pennsylvania's Anti-SLAPP Law does not "answer the same question" differently than Federal Rules 12 or 56. *See Shady Grove*, 559 U.S. at 398–99. By contrast, it answers a completely different question: what is the significance of prevailing under Rule 12 or 56 or at trial when a party was sued based on their protected expression? The Anti-SLAPP Law also imposes no heightened or different burden on the plaintiff before trial. Accordingly, there is no conflict.

**2. The Fee-Shifting Provision Is Substantive and Applies Here.**

The Court must next determine whether the fee-shifting provision is substantive. "Fee-shifting statutes are generally considered substantive under *Erie* because they are tied to the outcome of the litigation." *Paucek*, 349 F.R.D. at 516 (citing *Chambers*, 501 U.S. at 52–54; and *Chin v. Chrysler LLC*, 538 F.3d 272, 279 (3d Cir. 2008)). The Anti-SLAPP Law's fee-shifting provision is clearly tied to the outcome of the litigation. It requires the Court to award fees to the moving party when it finds the claims against him were based on protected public expression and the party successfully obtains a dismissal for failure to state a claim. 42 Pa. C.S. §§ 8340.15, 8340.18.

***16** The Court also considers whether applying the fee-shifting provision would be outcome determinative and frustrate *Erie*'s twin aims: to discourage forum shopping and avoid inequitable administration of the law. *Schmigel v. Uchal*, 800 F.3d 113, 119 (3d Cir. 2015). If the Anti-SLAPP Law's fee-shifting did not apply in federal court, parties seeking to silence their critics would have significant incentive to forum shop. If they choose federal court for their SLAPP suits, they will be able to circumvent liability for the defendant's fees. *See Godin v. Schencks*, 629 F.3d 79, 91–92 (1st Cir. 2010) (finding Maine's anti-SLAPP fee-shifting provision applies in federal court). Defendants, meanwhile, would be disadvantaged in federal court because they would have to pay their own fees and costs unless they initiate a completely new lawsuit under the SLAPP-back provision. *See Paucek*, 349 F.R.D. at 518–19. For these reasons, applying the fee-shifting provision in federal court is consistent with *Erie*'s twin aims.

This Court, therefore, holds that a party in federal court who prevails on a motion to dismiss under Rule 12(b)(6) is entitled to attorney's fees, court costs, and expenses of litigation under 42 Pa. C.S. § 8340.18(a)(1).

**C. Estrada's Immunity**

The Court must now determine whether Estrada is entitled to fees under the Anti-SLAPP Law. The question is straightforward and must be answered affirmatively. The Anti-SLAPP Law provides: "If a cause of action based on protected public expression is commenced against a party ... [who] is immune under section 8340.15 (relating to grant of immunity), the court shall award ... attorney fees, court costs and expenses of litigation." 42 Pa. C.S. § 8340.18.

Lento Law commenced a cause of action based on protected public expression. Estrada asserts his online reviews of Lento Law were protected public expression because they address the professionalism and ethics of lawyers. Estrada demonstrates the importance of these issues to the community by showing that state disciplinary boards publicize opinions regarding lawyers' suspensions and reinstatements from the state Bar. Indeed, the purpose of the Disciplinary Board of the Supreme Court of Pennsylvania is to "protect[ ] the public, maintain[ ] the integrity of the legal profession, and safeguard[ ] the reputation of the courts." *Protecting the Public and the Courts*, Disciplinary Bd. of Sup. Ct. of Pa., https://www.padisciplinaryboard.org/ (last visited July 16, 2026). Lento Law does not dispute that Estrada's reviews were matters of public concern, so the Court need not delve into the issue further. *See Albrecht v. Horn*, 485 F.3d 103, 113 n.3 (3d Cir. 2007) ("An issue not discussed in the briefs

is waived.”). Lento Law failed to state a cause of action upon which relief can be granted. Thus, both requirements to trigger the fee-shifting provision have been met. *See* 42 Pa. C.S. §§ 8340.15 & 8340.18. The Court must, therefore, award attorney's fees, court costs, and expenses of litigation against Lento Law. *Id.*[14]

**VIII. Conclusion**

For the foregoing reasons, Lento Law's SAC must be dismissed for failure to state a claim upon which relief can be granted. Estrada is entitled to attorneys' fees, court costs, and litigation expenses; however, the Court requires additional documentation to determine the appropriate amount to award.

An appropriate Order follows.

**All Citations**

Slip Copy, 2026 WL 2100471

Footnotes

1 *In the Matter of Joseph D. Lento*, VSB Dkt. No. 24-090-132162 (Va. State Bar Disc. Bd. June 26, 2025), Def.'s Ex. B, ECF No. 21-4 at 3.

2 ECF No. 21-4 at 3.

3 R. & R. of Disciplinary Bd. Sup. Ct. Pa., *Off. Disciplinary Counsel v. Lento*, No. 80 DB 2022 (Pa. July 1, 2024), *R. & R. followed* 2024 Pa. LEXIS 1750 (Pa. Nov. 19, 2024), *cert. denied* 145 S. Ct. 1932 (2025), available at https://www.pacourts.us/assets/opinions/DisciplinaryBoard/out/80DB2022-Lento.pdf and Def.'s Ex. A, ECF No. 21-3.

4 *See, e.g.*, ECF No. 21-3; ECF No. 21-4; *In re Lento*, 352 A.3d 921 (N.J. 2026).

5 Lento Law has brought numerous other defamation cases, including at least ten in the Philadelphia Court of Common Pleas in 2025 alone. *E.g., Lento Law Group PC v. Schaffer*, Case Id. No. 251201836 (Phila. Ct. Comm. Pls., Dec. 13, 2025); *Lento Law Firm LLC v. Jones*, Case Id. No. 251201833 (Phila. Ct. Comm. Pls., Dec. 13, 2025); *Lento Law Group PC v. Bahram*, Case Id. No. 251103741 (Phila. Ct. Comm. Pls., Nov. 26, 2025); *Lento Law Group PC v. Christenson*, Case Id. No. 251002164 (Phila. Ct. Comm. Pls., Oct. 20, 2025); *Lento Law Group PC v. Coombes*, Case Id. No. 250503786 (Phila. Ct. Comm. Pls., Aug. 21, 2025); *Lento Law Group PC v. Anozie*, Case Id. No. 250503791 (Phila. Ct. Comm. Pls., May 30, 2025); *Lento Law Group LC v. Sejour*, Case Id. No. 250503782 (Phila. Ct. Comm. Pls., May 30, 2025); *Lento Law Group v. Coombes*, Case Id. No. 250503786 (Phila. Ct. Comm. Pls., May 30, 2025); *Lento Law Group PC v. Feuerborn*, Case Id. No. 250201901 (Phila. Ct. Comm. Pls., Feb. 12, 2025); *Lento Law Firm v. Walker*, Case Id. No. 250202270 (Phila. Ct. Comm. Pls., Feb. 17, 2025); *Lento Law Firm v. Doe 1-8*, Case Id. No. 231102406 (Phila. Ct. Comm. Pls., Nov. 20, 2023); *Lento Law Firm v. Ibrahim*, Case Id. No. 240400659 (Phila. Ct. Comm. Pls., Apr. 4, 2024); *Lento Law Firm v. Pandey*, Case Id. No. 231100674 (Phila. Ct. Comm. Pls., Nov. 4, 2023); *Lento Law Firm v. Myers*, Case Id. No. 230900741 (Phila. Ct. Comm. Pls., Sept. 8, 2023).

6 Estrada has also brought a lawsuit against Lento Law in the Superior Court of the District of Columbia, raising claims of legal malpractice and false representations under consumer protection laws based on Lento Law's legal representation of him in connection with the same matters. Case No. 2025-CAB-008192 (D.C. Super. Ct. Dec. 12, 2025). The parties are litigating a motion to set aside entry of default, with a motions hearing scheduled for July 28, 2026.

7 Federal courts sitting in diversity must apply the substantive law of the forum state. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). The parties agree that Pennsylvania law governs this case.

8 Estrada also stated in several reviews that he received no responses whatsoever. For example, he stated he “sent numerous emails to Mr. Lento over the course of a few months, which were left unanswered.” ECF No. 18 ¶ 31. Lento Law does not allege that this was false. *See id.* ¶ 31.

9 To the extent Lento Law relies on the statement that "By ... unethically practicing law by legally advising me in a jurisdiction that Tom Terrill is not licensed to do so, Mr. Lento and the Lento Law Firm were a disappointment," ECF No. 18 ¶ 28, this is also a non-actionable opinion based on disclosed, undisputedly true facts. Estrada believed it was unethical to provide legal advice in a jurisdiction where one is not licensed, even in a university student defense matter. He provided the factual basis for that opinion, none of which Lento Law contends is false: Terrill is a New York attorney who is not licensed in Washington, D.C., he provided legal advice in that jurisdiction, the advice was connected to a university disciplinary matter (specifically involving Title IX and non-Title IX policies), and Lento Law charged a nonrefundable fee of $15,000 which they refused to refund despite failing to produce results. *Id.* The reader was therefore given the factual basis for Estrada's view that Terrill acted unethically by advising him concerning that matter without being licensed in D.C. Lento Law argues Terrill did not need to be licensed in D.C. to represent Estrada in the university matter, so the statement is misleading. *Id.* ¶ 29. Whether Estrada correctly understood the applicable licensing requirements goes to the soundness of his opinion; it does not transform the statement into an opinion implying undisclosed defamatory facts.

10 In the Cause of Action sections of the SAC, Lento Law also alleges Estrada wrote, "In addition to being a sick pervert sex freak, he's a blatant liar." *E.g.*, ECF No. 18 ¶ 61.vi. This statement does not appear in any of the reviews Lento Law attaches to the SAC or in any of the preceding paragraphs describing the allegedly false statements. Lento Law also does not mention the statement in their opposition brief or attempt to rebut Estrada's argument that it is a non-actionable opinion. The Court, therefore, treats this point as conceded by Lento Law. *See* *Kiger v. Mollenkopf*, No. 21-409, 2021 WL 5299581, at *2 n.2 (D. Del. Nov. 15, 2021) (explaining that "[a]rguments based on any other statements or omissions alleged in the Complaint are deemed waived because they were not presented in Plaintiffs' opposition brief" in a case involving claims based on false or misleading statements of fact).

11 *Vespico* and *McCaffery*, meanwhile, declined to decide whether the Anti-SLAPP Law applies in federal court because they lacked sufficiently detailed briefing on the issues. *Vespico*, 2026 WL 736463, at *12; *McCaffery*, 2026 WL 746606, at *12.

12 Lento Law relies on *La Liberte* to argue Estrada cannot recover fees under the Anti-SLAPP Law because he brought a Rule 12(b)(6) motion to dismiss, not a special motion under the Anti-SLAPP Law. ECF No. 22 at 27. This argument is misplaced. Unlike California's anti-SLAPP law, which *La Liberte* analyzed, the fee-shifting provision of Pennsylvania's Anti-SLAPP Law does not apply only to a successful special motion to dismiss. It applies to any party who is subject to a suit based on his protected public expression who is immune.

13 Unlike New Jersey's law, Pennsylvania's Anti-SLAPP Law does not have a severability provision.

14 Estrada has not submitted documentation of his attorneys' fees, court costs, or litigation expenses. Thus, the Court will review additional filings related to the appropriate amount to award.

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.